UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

Lisa M.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

6:20-cv-1378-JR

OPINION AND ORDER

Russo, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits. For the reasons stated below, the Commissioner's decision is affirmed.

Plaintiff asserts disability beginning September 24, 2012, due to right nerve pain, degenerative joint neck pain, major depression, post-traumatic stress disorder (PTSD), migraines,

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

foot pain, lumbar back pain, right ear ringing, and right-hand numbness. Tr. 163, 261.[2]  After a hearing held on April 14, 2020, an Administrative Law Judge (ALJ) determined plaintiff was not disabled. Tr. 32, 15-26.  Plaintiff contends the ALJ erred by: (1) rejecting plaintiff's symptom testimony; (2) rejecting the opinion of plaintiff's mental health therapist; and (3) rejecting a lay witness statement.

A.    Plaintiff's Testimony

Plaintiff reported she suffers migraines, PTSD, and severe pain in her right hip which can "arise out of nowhere" and prevent her from going to work.  Tr. 271.  Plaintiff also reported she only goes out when she has a doctor's appointment, goes to church, or goes shopping because she "does not like being around people".  Tr. 274.  Plaintiff further reported her social activities consist of talking on the phone with family members (or sometimes they drop by) and going to church when she "feels up to it".  Tr 275.  She asserts her social activities have changed since the onset of her condition began because she doesn't like being in crowds or going places unnecessarily.  Tr. 276.

Plaintiff testified she is unable to work because of migraines and pain in her hip.  Tr. 53. Plaintiff further testified she stays to herself and doesn't like being around people or in public.  Tr. 60.

The ALJ discounted plaintiff's statements as inconsistent with the objective medical record and activities of daily living.[3]  While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom

---

[2] Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017.  Tr. 17.
[3] The Commissioner also notes that plaintiff's treatment for mental and physical issues was conservative in that she primarily relied on physical therapy, ice, heat, some steroid injections, and counseling to treat her conditions.  While an ALJ may properly discredit testimony based on conservative treatment (Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008)), the ALJ did not actually directly state such a finding.  An ALJ's decision may not be upheld based on "post hoc rationalizations that attempt to intuit what the ALJ might have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226–27 (9th Cir. 2009).

testimony, Trevizo v. Berryhill, 871 F.3d 664, 679 9th Cir. 2017, it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ must consider in his credibility analysis."); SSR 16-3p, 2017 WL 5180304, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult").  Here, the ALJ noted the medical evidence revealed relatively minor issues that could be accommodated with limits in residual functional capacity such as no overhead lifting with the left arm, no climbing or crawling, and simple routine tasks limiting interaction with people.  Tr. 21-23.  See Tr. 721 (mild findings regarding shoulder joint); 738 (full range of motion); 1076 (Shoulder is fine but there is cartilage damage); 772-74 (mild deficit to above average scores regarding processing speed, mental control, learning and memory, and visual spatial functions).

With regard to plaintiff's daily activities, the ALJ noted inconsistencies with the severity of symptoms plaintiff alleged.  Tr. 22-24.  As noted above, plaintiff asserts she leaves the house only for very limited purposes and has extremely limited social activities and interactions with people.  However, the ALJ noted that the record showed plaintiff began dating in February 2015 and noted friendships with two individuals to "hang out" with.  Tr. 22, 1634 (Reports she is doing great, has been dating for a month, has two friends that she can hang out with).  The ALJ also noted plaintiff worked at the State Fair with a friend in September 2015 and again in September 2016.  Tr. 22-23, 1628 (September 2015 - Reports working with a friend at the State Fair and enjoyed it despite the long hours causing a migraine); Tr. 1613 (September 2016 – Reports working

at the State Fair and realized that she was not anxious despite the presence of a lot of people).[4] The ALJ further noted plaintiff purchased a bike in July 2015 to get out of the house more often and that her romantic relationship was going well in December 2016. Tr. 22-23, 1615 (plaintiff reports buying a bicycle to go out more which helps her depression); Tr. 1609 (Reports things are going well with person she is dating). The ALJ also noted that by February 2018, plaintiff reported she is doing well with her now husband. Tr. 23, 1592. In addition, the ALJ noted plaintiff traveled to the east coast to visit her daughter and grandchildren. Tr. 22, 1626-27.

The ALJ pointed to substantial evidence in the record regarding plaintiff's daily activities that are reasonably viewed as inconsistent with plaintiff's allegations of being a virtual shut-in unable to deal with people or engage in work activity due to severe pain. Accordingly, the ALJ provided clear and convincing reasons to discredit plaintiff's statements of disabling symptoms. See Molina v. Astrue, 674 F.3d 1104, 1112-14 (9th Cir. 2012) (Daily living activities may provide clear and convincing reasons to reject subjective symptom testimony). As such, the ALJ did not err in rejecting plaintiff's symptom testimony.

B.     Medical Opinion

Plaintiff's mental health therapist, Jennifer Morzanti, began treating plaintiff in March 2014 for PTSD and major depressive disorder related to her military service. Tr. 256. On March 18, 2019, Morzanti opined:

> It seems doubtful [plaintiff] will be able to maintain gainful employment due to severe level of depression and PTSD…. [I]t appears the process of going to work and having to deal with other people is provoking exacerbated PTSD symptomology and depression, which increases potential to cause harm. It is this author's opinion for the best interest of [plaintiff], she should not be working at this time.

---

[4] Plaintiff also reported that she planned to work "fairs and stuff" in Summer 2017 with her boyfriend and son working for a company that provides food/condiment samples. Tr. 1131.

Tr. 256.

On March 2, 2020, Morzanti opined that plaintiff struggles with being around people for long periods of time including suffering from anxiety around authority figures and that she will continue to struggle with anxiety and memory issues. Tr. 1537.[5]

In considering a medical opinion, the ALJ must consider supportability, consistency, the relationship with the claimant, length of treatment relationship, frequency of examinations, examination relationship (i.e., in person versus record), specialization, and other factors such as an understanding of disability policies and requirements. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. 20 C.F.R. § 1404.1520c(b)(2).

Morzanti specifically noted plaintiff is extremely limited in her ability to understand and remember simple instructions, to interact with the public, and respond appropriately to usual work situations and changes in work routine settings. Tr. 1539-40.

The ALJ found the extreme limitations were not supported by or consistent with the treatment records showing she was doing well in her relationships and worked at the State Fair on an annual basis. Tr. 24. The ALJ reasonably concluded that engaging in dating activity leading to a successful long-term relationship as well as annual work in a very large public gathering discredits an opinion asserting such extreme limitations regarding the ability carry out simple work

---

[5] It is unclear if Morzanti intended to opine that plaintiff would be unable to work due to anxiety and memory issues even in simple, routine, low stress jobs that do not require her to come into contact with the public or coordinate with co-workers. Morzanti stated plaintiff "could/will struggle with anxiety, and memory issues" in response to a question in which plaintiff's counsel asked:
> Ultimately, I believe the question in [plaintiff's] case will come down to whether she could sustain a simple routine, low stress job, that does not require her to come into contact with the public and does not require her to work in close coordination with supervisors or co-workers. The main requirement of such a job is that she be present full-time, eight hours per day, five days per week without special accommodations, or without excessive absences from work. Excessive absences from work is defined as absences greater than two days per month. ls there anything about Ms. XX's condition, and the symptoms that she is experiencing that would interfere with her ability to sustain this type of activity?

Tr. 1537. Based on the question, it appears Morzanti intended the opinion to apply to such work especially given her opinion that plaintiff suffered "extreme" limitations in these areas.

Page 5 – OPINION AND ORDER

and engage with the public. As noted above, the record supports the ALJ findings. Accordingly, the ALJ did not err in rejecting Morzanti's opinion.

C.    Lay Witness Statements

Plaintiff's husband provided a third-party function report in which he generally mirrors plaintiff's description of her limitations. Tr. 294-301.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness. Id. The ALJ failed to address the third-party report. However, where the ALJ validly rejects the limitations described by a lay witness in discussing plaintiff's testimony, the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony does not alter the ultimate nondisability determination. Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012). Accordingly, the ALJ's error was harmless.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed, and this action is dismissed. The Clerk is directed to enter a judgment.

DATED this 1st day of November, 2021.

      /s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge